**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**LAW OFFICES OF C. VALERIE IBE, INC.,**
a Maryland law corporation,
and
**C. VALERIE IBE, Esq.,**
individually,

**Plaintiffs,**

v.

**METLIFE LEGAL PLANS, INC.,**
a Delaware Corporation,
and
DOES 1 through 50, inclusive,

**Defendants.**

Civil Action No. _______________
**JURY TRIAL DEMANDED**

## COMPLAINT

## I. INTRODUCTION

1. This action arises from Defendant, MetLife Legal Plans, Inc.'s systematic, unreasonable, and discriminatory withholding, delayed payment, and unilateral "recoupment" of earned legal fees to Plaintiff, Law Offices of C. Valerie Ibe, Inc., a minority-owned law firm that has continuously served as a MetLife panel attorney since 2018. Defendant has engaged in a pattern and practice of: (a) selectively paying only low-dollar invoices while placing high-dollar, fully documented billings (particularly contested divorce and other complex matters such as the C.B./C.E. matter) into indefinite "under review" status for weeks or months without any meaningful communication, then imposing belated procedural hurdles (extra-fee approval demands and false rejection notices)

that force repeated rebilling and further delay; (b) unilaterally withholding and/or "recouping" approximately 50% of billings without transparency or itemized accounting; (c) asserting baseless overpayment claims that were successively reduced only after vigorous dispute, then fully recouping the disputed amounts by taking half of subsequent payments; (d) refusing reasonable audit extensions authorized by its own Participating Law Firm Manual; (e) permitting its Panel Representative, Olivia Smith, to issue reflexive, uninvestigated responses that falsely characterize properly submitted portal billings and extra-fee requests as "manual" submissions or claim that "there is no request in the system," thereby compounding delay and frustration; (f) treating minority-owned firms less favorably than similarly situated non-minority-owned firms with respect to payment timing and processing; and (g) eliminating the previously published PSR Monthly Closing Schedule and attorney submission deadlines in or about April 2026 and thereafter refusing to publish any replacement pay schedule, thereby depriving panel attorneys of any predictable payment timeline. These actions form part of a broader, concerted effort by MetLife and its agents to frustrate Plaintiffs, inflict financial hardship, and pressure Plaintiffs into withdrawing from the MetLife attorney panel program.

2. As a direct result, Plaintiffs have suffered substantial unpaid and improperly recouped fees (including at least $6,522 in specifically identified outstanding amounts as of October 6, 2026, plus additional withheld, delayed, and recouped amounts), overdraft and late fees, severe financial hardship, and emotional distress. Plaintiffs seek compensatory, consequential, and punitive damages, interest, attorney fees, declaratory and injunctive relief, and such other relief as the Court deems just.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) based on Plaintiffs' claim under 42 U.S.C. § 1981, and under 28 U.S.C. § 1332 (diversity of citizenship) because Plaintiffs are citizens of Maryland and California. Defendant is a citizen of Delaware, and the amount in controversy exceeds $75,000 exclusive of interest and costs (including unpaid and improperly recouped fees, consequential damages from overdrafts and late fees, pain and suffering, emotional distress, and punitive damages).

4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims (including breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and fraudulent business practices, unfair and deceptive trade practices, and unjust enrichment / quantum meruit) because those claims form part of the same case or controversy as the federal claim under 42 U.S.C. § 1981 and arise from a common nucleus of operative fact.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Maryland: Plaintiffs maintain a Maryland office at 1002 ½ Reisterstown Road, Pikesville, Maryland 21208 from which covered legal services were performed for numerous Maryland plan members; the financial injury, overdraft charges, late fees, and business disruption were suffered in Maryland; and Plaintiffs' performance of the panel contract and communications regarding payment occurred from the Maryland office. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c) because Defendant is subject to personal jurisdiction in this District by virtue of its systematic and continuous nationwide business, including administration of prepaid legal plans covering Maryland residents and engagement of Maryland-based panel attorneys.

6. This Court has personal jurisdiction over Defendant because it systematically and continuously conducts business in Maryland through its nationwide panel program, contracts with Maryland

attorneys and serves Maryland plan members, and the claims arise from that business activity and the resulting harm to Plaintiffs in Maryland.

## III. PARTIES

7. Plaintiff Law Offices of C. Valerie Ibe, Inc. is a Maryland law corporation with its principal office at 1002 ½ Reisterstown Road, Pikesville, MD 21208 and a California office at 6442 Platt Avenue, Ste 2099, West Hills, CA 91307. It has been a continuous MetLife Legal Plans panel firm since 2018 and regularly performs covered legal services for MetLife plan members, including numerous Maryland clients.
8. Plaintiff C. Valerie Ibe, Esq. is an individual attorney and a resident of California who is admitted to practice law in California, Maryland, New York, United States Courts of Appeal for the 2nd, 4th, 6th and 7th Circuits, United States Tax Court and the United States Supreme Court. She is the principal of the Firm and a longstanding MetLife panel attorney. She is a member of a racial minority group.
9. Defendant MetLife Legal Plans, Inc. is a Delaware corporation with its principal place of business at 1111 Superior Avenue, Suite 800, Cleveland, OH 44114. It administers employer-sponsored and individual prepaid legal plans and maintains a nationwide panel of approximately 20,000 attorneys, including Plaintiffs, and does business in Maryland by covering Maryland residents and contracting with Maryland panel attorneys. Olivia Smith serves as the assigned Panel Representative for Plaintiffs and is an agent of Defendant whose acts and omissions are attributable to MetLife.
10. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 50 and therefore sue them by such fictitious names. Plaintiffs will amend this Complaint

to allege their true names and capacities when ascertained. Each Doe Defendant is responsible in some manner for the acts and omissions alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. The Panel Relationship and Payment Obligations

11. Since 2018, Plaintiffs have continuously served as a Participating Law Firm on MetLife's panel under the terms of the Participating Law Firm Manual (the "Manual"), most recently revised May 2024. Under the Manual and the course of dealing, Plaintiffs perform covered legal services for MetLife plan members and are entitled to timely payment of the applicable standard or approved fees.

12. From at least 2018 through approximately April 2026, MetLife published a detailed monthly closing schedule (the "PSR Monthly Closing Schedule") that set specific deadlines for attorney submission of PSRs (Payment Service Requests / billings) by 1:00 p.m. on designated dates and corresponding Tipalti payment dates approximately mid-month and at month-end (or the next business day). These published schedules confirmed that payments were processed twice per month and required attorneys to submit completed work by the stated deadline in order for payment to be made in that pay cycle. Page 76 of the Manual likewise stated that payments are processed twice per month depending on when the bill is submitted. Beginning in or about April 2026, MetLife eliminated the published attorney submission deadlines and the PSR Monthly Closing Schedule. Since that time, MetLife has not published any pay schedule or submission deadline for panel attorneys, leaving panel firms without any reliable means to predict when properly submitted billings will be paid.

13. Page 79 of the Manual expressly permits a panel attorney under audit to request an extension of time through the Panel Representative.

14. Plaintiffs routinely bill $2,000–$4,000 in a two-week period and submit fully documented invoices, including itemized timesheets required by the Manual for divorce and other high-dollar matters. Many of the plan members served are Maryland residents, and services are performed from Plaintiffs' Maryland office.

**B. Systematic Delay, Selective Payment, and "Under Review" Pretext – Documented by Contemporaneous Emails**

15. Beginning approximately August 2025 and continuing to the present, MetLife has unfairly and unreasonably withheld payment of Plaintiffs' earned fees without legitimate cause. When Plaintiffs raised the issue, MetLife stated only that "payroll was behind" and that it was "working as fast as it can," or that bills remained "under review" with no further explanation.

16. MetLife has engaged in a deliberate and consistent practice of processing and paying the smallest billed items first (for example, $15 consultations, $75 document reviews, or $100 demand letters) while placing larger items ($1,000–$3,000 or more) "under review" for weeks or months. Payments are made piecemeal rather than in the ordinary course for work completed.

17. This pattern is especially egregious with respect to divorce and other high-dollar matters. Billings for divorce cases always include the itemized timesheets required by the Manual, yet those fully documented, high-value invoices are systematically left in "under review" status for weeks and sometimes months while trivial charges are paid promptly. This pattern systematically delays payment of the majority of earned fees and inflicts ongoing financial injury.

18. Contemporaneous email correspondence with MetLife Panel Representatives and managers documents the pattern. By way of illustration only:

a. On September 15, 2025, Plaintiff Ibe emailed Taylor Iacobacci (cc: Olivia Smith) stating that "every single pay period there are multiple billings that are not paid. They are perpetually 'under review' sometimes for months," citing specific custody and bankruptcy matters (A., J., T.) that remained under review despite timely submission before deadlines, and explaining that the practice was "disorganizing the payment system for my law office" and preventing any reliable prediction of cash flow.

b. On November 3, 2025, Plaintiff Ibe emailed Olivia Smith listing outstanding amounts totaling $2,845 (C.J. bankruptcy $900; D. divorce $875; F. $920; two K. document reviews $75 each), noting that some work dated to October, that only $400 had been paid on $3,245 billed, and that non-payment was "affecting my ability to pay my Law office bills." Olivia Smith responded that there was "no notation from claims on the bills" and that she would check the next day.

c. On December 2, 2025, Plaintiff Ibe emailed Olivia Smith listing $3,415 in outstanding billings (C.R. $575; multiple J.A. $75 entries; T.J. $1,640; C.S. $900) and noting that weekly catch-up payments had stopped. Olivia Smith replied that weekly payments had stopped and that a letter would be sent when they resumed; later the same day she stated that certain amounts "should get paid tomorrow if not next pay period." Plaintiff then pointed out that the approved payment of only $1,175 (small items including a $15 divorce consultation) did not include the $3,415 previously identified. On December 3, 2025, Olivia Smith further responded that the amount "will be on the next check then" because "it got approved too late in the day to be sent out on today's billing," confirming the continued lag between approval and actual payment.

d. On December 19, 2025, Plaintiff inquired about payment timing; Olivia Smith responded that payment "was approved and went out yesterday." On December 22, 2025, Plaintiff inquired whether payment would arrive before Christmas; after an out-of-office reply, Jeffrey Nodzak (Attorney Network Manager) acknowledged on December 23 that "The payments were delayed in the approval process. They should be processed shortly."

e. On December 29–30, 2025, after receiving a payment that included some arrears, Plaintiff wrote to the Office of Panel Management explaining that since August 2025 payments had been processed "erratically," that she would bill $4,315 for a cycle and receive only $400 without explanation, and that the pattern had caused "a lot of hardship."

f. On September 22, 2025, MetLife issued a Tipalti payment confirmation for only $355 (Document number 9250120000207707). This small, isolated payment is consistent with the pattern of paying low-dollar amounts while leaving larger, fully documented invoices in "under review" or unpaid status for extended periods.

19. These emails are representative examples of the larger pattern of selective prioritization of low-dollar invoices, prolonged unexplained "under review" holds on high-value fully documented work, and failure to provide transparent accounting or timely payment consistent with the Manual's twice-monthly processing statement.

**C. The Pattern of Uninvestigated, Inaccurate Responses by Panel Representative Olivia Smith**

20. Olivia Smith is the Panel Representative assigned to Plaintiffs. Whenever Plaintiff C. Valerie Ibe raises an issue concerning unpaid billings for completed work or the status of an extra-fee request, Ms. Smith routinely fails to examine the MetLife portal to verify whether the billing or request is properly present. Instead, she automatically and without investigation responds that the billing or

extra-fee request was entered "manually" (and therefore will take a long time to process or approve) or that "there is no request in the system for the member"—assertions that are frequently false.

21. This reflexive, uninvestigated practice is illustrated by the September 22, 2026 email exchange concerning the C.B./C.E. contested divorce matter:

    a. At 4:37 a.m. on September 22, 2026, Plaintiff Ibe emailed Olivia Smith and Taylor Iacobacci requesting that the extra-fee request for C.E. "be approved as soon as possible," noting that "there are tons of unpaid bills for work that was provided 2 months ago," that trial was set for October 6, 2026, and that trial preparation was ongoing. Plaintiff stated it was "unfair and illegal for one to continue working without getting paid."

    b. At 5:47 a.m., Olivia Smith replied: "The submission for Collins Enahowo was done via manual billing. Manual billings take way longer than regular claims. The claims department is working mandatory overtime. Unfortunately, I am unable to expedite the matter at this time. Billing via the portal at the start of the matter is the best way to alleviate billing delays."

    c. At 5:49 a.m., Plaintiff Ibe immediately corrected the false premise: "I did it through the portal not manually. Is doing through the portal considered 'manual'?"

    d. At 5:51 a.m., Olivia Smith responded, again without apparent investigation of the portal: "There is no request in the system for the member."

22. Ms. Smith's successive, contradictory, and factually inaccurate responses—first claiming the submission was "manual," then claiming there was "no request in the system"—were made without any examination of the portal entries that Plaintiff had in fact submitted. This pattern of automatic, uninvestigated replies has been repeated on multiple prior occasions and forms part of

MetLife's broader concerted effort to delay payment, frustrate Plaintiffs' cash flow, and pressure Plaintiffs into quitting the attorney panel program.

**D. The C.B. / C.E. Contested Divorce Matter – Prolonged "Under Review," Belated Extra-Fee Demand, Rebilling, Partial Payment, 50% Recoupment, and Continued Rejection**

23. A particularly clear and ongoing illustration of MetLife's unfair and fraudulent payment practices is the highly contested divorce and custody matter of C.B. (also referenced in MetLife systems as C.E.) (Service 122 – Divorce / Dissolution (contested)). Plaintiffs performed substantial work, submitted fully documented itemized timesheets as required, obtained extra-fee approval, and still have not been paid in full.

24. Timeline of MetLife's handling of this matter:

a. Beginning on or about August 9, 2026, Plaintiffs entered billings in the MetLife portal for work performed on this contested divorce (including periods covering July–August 2026). The billings sat in "under review" status for weeks with no questions, requests for additional documentation, or any other communication from MetLife. Ms. Ibe repeatedly inquired about the status of payment and was told only that the claims remained "under review."

b. Approximately six weeks later, on or about September 20, 2026, MetLife finally informed Ms. Ibe that she needed to apply for extra-fee approval. There is no legitimate reason this requirement could not have been communicated during the first week of August when the billings were first submitted. The delay itself caused further financial injury.

c. On September 22, 2026, as detailed above, Plaintiff Ibe again pressed for prompt extra-fee approval and was met with Olivia Smith's uninvestigated and inaccurate assertions that the submission was "manual" and that "there is no request in the system."

d. On September 24, 2026, MetLife issued an Extra Fee Approval (Service ID 5136454) authorizing extraordinary fees at $100.00 per hour up to $9,000.00 total attorney fees for this “very highly contested divorce and custody case,” with billing permitted after every 10 hours of work completed. The approval expressly required submission of time sheets and noted that the matter had an upcoming trial.

e. That same day (September 24, 2026), Plaintiffs rebilled all outstanding amounts for the three billing cycles involved, attaching (i) the extra-fee approval letter, (ii) detailed itemized timesheets showing the work performed and hours expended, and (iii) explanations in the comment section of the portal. The rebilled periods included, among others:

   i. 7/1/26–8/9/26 (10 hours; only $775 of the $1,000 billed had previously been paid, leaving a $225 balance);

   ii. 8/11/26–8/18/26 (12.70 hours); and

   iii. 8/19/26–9/12/26 (10 hours).

f. Despite the complete resubmission with all required documentation on September 24, 2026, the claims remained unpaid.

g. On October 7, 2026, MetLife issued a Billing Inquiry rejecting Claim ID 4226404 ($1,000 for work performed 8/17/26–9/12/26) on the stated ground that “The maximum standard fee for this legal matter has been paid. Please request extra fee approval for additional billing.” This assertion was false: extra-fee approval had already been obtained on September 24, 2026, and had been attached to the resubmitted claim together with itemized timesheets and explanatory comments. The rejection required Plaintiffs to resubmit yet

again, attaching a copy of the Billing Inquiry, thereby forcing still further delay in payment for services already fully performed and documented.

h. Earlier, Claim ID 4096742 (initially billed August 9, 2026, for $775 covering part of the July–August period) was eventually paid in part; MetLife then immediately took approximately 50% of that payment as a "recoupment" without transparent accounting. Other periods remain unpaid or under the same opaque withholding practice.

25. This sequence—weeks of unexplained "under review" silence, a belated demand for extra-fee approval that could and should have been raised immediately, uninvestigated and inaccurate responses from the Panel Representative, rebilling with full documentation and approval attached, continued non-payment, and then a false rejection claiming that extra-fee approval was still missing—exemplifies MetLife's systematic practice of using procedural obstacles and shifting explanations to delay and reduce payment of earned fees on high-dollar contested matters.

26. MetLife has now systematically withheld and/or recouped approximately 50% of Plaintiffs' billings across the board, including by applying unilateral "recoupment" deductions against current payments for the previously disputed overpayment claim, without providing itemized accounting or obtaining agreement.

**E. The Baseless Overpayment Audit, Compressed Deadlines, and Complete Recoupment Without Transparency**

27. On February 18, 2026, MetLife initiated a post-payment audit and asserted that Plaintiffs owed approximately $11,530 as an alleged overpayment. Given the limited amounts MetLife had actually paid over the relevant period and the age of many of the services (some dating to 2024), this claim was baseless on its face.

28. After Plaintiffs disputed the claim and submitted supporting materials, the asserted amount was reduced first to $3,490 on April 9, 2026 (Alissa Lehn, Payment Recovery Specialist), and then further to $1,485 on July 15, 2026 (Jeanenne Roe, Payment Recovery Specialist). Plaintiffs continued to dispute even that reduced figure.

29. Despite Page 79 of the Manual expressly permitting a panel attorney under audit to request an extension through the Panel Representative, MetLife granted only a compressed extension to June 1, 2026 (instead of the June 30, 2026 date Plaintiffs requested). Plaintiffs were forced to submit a partial response under extreme time pressure while simultaneously handling client emergencies, including a bankruptcy filing due the same evening.

30. MetLife refused Plaintiffs' repeated requests for arbitration or mediation of the remaining $1,485 dispute. Instead, MetLife has already recouped all of the disputed amounts (and more) without any transparency, by unilaterally taking approximately 50% of all subsequent billings as "recoupment." No contemporaneous itemized accounting linking specific deductions to specific alleged overpayments was provided. Plaintiffs have written multiple times to individuals in MetLife leadership (including Payment Recovery Specialists Alissa Lehn and Jeanenne Roe, and Attorney Acquisition Specialist Stan Godlewski) describing these problems and formally demanding an itemized accounting of all withholdings together with mediation. Those communications have been ignored or met with silence.

**F. Outstanding Amounts and Consequential Harm**

31. As of October 6, 2026, specifically identified outstanding, unpaid, and/or improperly recouped amounts owed by MetLife include (without limitation):

    a. N.N. (adversary proceedings and amended Chapter 13 plans, 2019–2020): $1,150 unbilled & unpaid;

b. L.N. (7/22/21–12/1/22): $1,070 unpaid;

c. J.M. (6/14/2024): $100 unbilled & unpaid;

d. B.S. (2/9/2024): $75 unbilled & unpaid;

e. F.A. (uncontested divorce): $1,000 billed & unpaid;

f. C.B. / C.E. (contested divorce, July–September 2026): multiple periods totaling substantial hours under extra-fee approval (including residual $225 from the first period after only $775 of $1,000 was paid, plus subsequent 10- and 12.70-hour periods), still largely unpaid despite rebilling with extra-fee approval and itemized timesheets on September 24, 2026, and subject to further improper rejection on October 7, 2026;

g. Overdraft charges incurred due to non-payment / improper payment of fees: September 2025 ($72), October 2025 ($245), December 2025 ($315) = $632.

32. The sum of these specifically identified amounts is at least $6,522. This figure is conservative because the non-payment, improper payment, and unilateral 50% recoupment for completed work has persisted from August 2025 to the present, and Plaintiffs have not billed for all overdraft charges incurred in intervening months. Additional amounts remain withheld or delayed under the approximately 50% withholding/recoupment practice.

33. The delayed, withheld, and unilaterally recouped payments have made it impossible for Plaintiffs to meet ordinary financial obligations and have caused significant late fees and overdraft charges on Plaintiffs' accounts, severe financial hardship, pain and suffering, emotional distress, and disruption of the Firm's ability to serve clients, including Maryland clients served from the Maryland office.

## G. Differential Treatment of Minority-Owned Firms and Concerted Effort to Force Withdrawal from the Panel

34. Plaintiff Law Offices of C. Valerie Ibe, Inc. is a minority-owned law firm. Plaintiffs allege that MetLife's pattern of selectively delaying and withholding high-dollar billings, prolonged "under review" status, aggressive audit practices, opaque 50% recoupment, and the reflexive uninvestigated responses of its Panel Representative has been applied more harshly to minority-owned firms than to similarly situated non-minority-owned firms that submit comparable high-dollar divorce and litigation billings with the required itemized timesheets.

35. Non-minority-owned firms performing the same types of covered services under the same Manual are not subjected to the same systematic delays, selective prioritization of low-dollar invoices, indefinite "under review" holds on fully documented high-value work, unilateral half-payment "recoupments" without transparent accounting, or automatic false assertions that properly submitted portal entries are "manual" or "not in the system." This differential treatment impairs Plaintiffs' right to make and enforce contracts on equal terms and constitutes intentional discrimination on the basis of race in the making and enforcement of contracts in violation of 42 U.S.C. § 1981.

36. The foregoing practices—selective non-payment, prolonged "under review" status, false rejection notices, uninvestigated and inaccurate responses by the assigned Panel Representative, compressed audit deadlines, and unilateral 50% recoupment—form part of a broader, concerted effort by MetLife and its agents to frustrate Plaintiffs, impose severe financial hardship, and pressure Plaintiffs into withdrawing from the MetLife attorney panel program.

### H. Demand Letter and Preservation Request

37. On September 8, 2026, Plaintiffs sent a formal Demand Letter to MetLife (via certified mail and email) demanding immediate payment of all outstanding earned fees with interest, cessation of the selective payment and opaque recoupment practices, publication of a clear pay schedule, resolution of the disputed claim through mediation or arbitration, an itemized accounting of all withholdings and recoupments, and confirmation of prompt future responses. MetLife failed to meet the demands within the 14-day period.

38. On October 8, 2026, Plaintiffs served a comprehensive Request for Preservation of Documents and Electronic Data requiring MetLife to preserve all billing, payment, portal, audit, comparative firm data (including minority vs. non-minority treatment), recoupment calculations, and related ESI from January 1, 2019 to the present.

## V. FIRST CAUSE OF ACTION

Breach of Contract

39. Plaintiffs reallege and incorporate by reference paragraphs 1 through 38 as though fully set forth herein.

40. A valid contractual relationship existed between Plaintiffs and MetLife arising from the Participating Law Firm arrangement, the Manual, and the parties' long course of dealing since 2018. Under that contract, MetLife was obligated to pay Plaintiffs timely for covered legal services properly performed and billed in accordance with the Manual, to process properly submitted portal billings and extra-fee requests in the ordinary course, and to refrain from imposing artificial procedural obstacles or uninvestigated false characterizations of submissions.

41. MetLife breached the contract by: (a) failing to pay earned fees within a reasonable time or in accordance with the twice-monthly payment cycle and published PSR Monthly Closing Schedule

that existed from 2018 until approximately April 2026, and thereafter failing to publish any replacement pay schedule or submission deadlines; (b) selectively prioritizing small invoices while indefinitely "reviewing" large, fully documented invoices; (c) unilaterally withholding and/or recouping approximately 50% of billings and amounts related to the disputed overpayment claim without transparency or agreement; (d) granting only a compressed audit extension contrary to Manual language authorizing reasonable extensions; (e) permitting its Panel Representative to issue uninvestigated and inaccurate responses that falsely characterized properly submitted portal entries as "manual" or "not in the system," thereby further delaying payment; and (f) failing to provide any meaningful pay schedule or itemized accounting of withholdings and recoupments.

42. Plaintiffs have performed all conditions, covenants, and promises required on their part, except those excused or prevented by MetLife's breaches.

43. As a direct and proximate result of MetLife's breaches, Plaintiffs have been damaged in an amount to be proven at trial, including unpaid and improperly recouped fees of at least $6,522 plus additional withheld amounts, interest, consequential damages (overdraft and late fees), pain and suffering, severe emotional distress and other losses.

## VI. SECOND CAUSE OF ACTION

Breach of the Implied Covenant of Good Faith and Fair Dealing

44. Plaintiffs reallege and incorporate by reference paragraphs 1 through 43 as though fully set forth herein.

45. Every contract contains an implied covenant of good faith and fair dealing. MetLife breached that covenant by exercising its discretion over payment processing, "under review" status, audits, withholdings, recoupments, and the responses of its Panel Representative in a manner that unfairly

frustrated Plaintiffs' right to receive the benefits of the panel arrangement—namely, timely and transparent payment for completed work.

46. The deliberate prioritization of low-dollar invoices, indefinite delay of high-dollar fully documented invoices (as documented in the September–December 2025 email correspondence), the September 22, 2026 exchange in which the Panel Representative issued successive uninvestigated and inaccurate statements, compressed audit deadlines, baseless initial overpayment claim, refusal to mediate, and unilateral 50% recoupment of disputed amounts without transparent accounting constitute bad faith and form part of a concerted effort to pressure Plaintiffs out of the panel program.

47. As a direct and proximate result, Plaintiffs have suffered the damages herein including pain and suffering, severe emotional distress and is entitled to compensatory, consequential damages, attorney fees and costs.

## VII. THIRD CAUSE OF ACTION

Fraud and Fraudulent Business Practices

48. Plaintiffs reallege and incorporate by reference paragraphs 1 through 47 as though fully set forth herein.

49. MetLife knowingly and intentionally engaged in fraudulent and deceptive practices, including: (a) asserting an initial $11,530 overpayment claim that was baseless and successively reduced only after dispute and production of records, then fully recouping the disputed amounts (and more) by taking approximately 50% of subsequent billings without transparent accounting; (b) using "under review" status as a pretext for prolonged non-payment of fully documented high-value invoices (including the C.B./C.E. matter billed August 9, 2026, which remained under review for weeks with no communication beyond the generic status, followed by partial payment and immediate

50% recoupment); (c) representing that payments would be processed twice monthly pursuant to the published PSR Monthly Closing Schedule (and later eliminating that schedule entirely without publishing any replacement) while systematically delaying the majority of earned fees and paying only low-dollar items promptly (as shown by the contemporaneous emails of September 15, November 3, December 2, December 19, and December 22–30, 2025); (d) through its Panel Representative, issuing uninvestigated and factually false statements that properly submitted portal extra-fee requests were "manual" or that "there is no request in the system," as occurred on September 22, 2026; and (e) ignoring repeated formal demands for accounting and mediation.

50. Plaintiffs reasonably relied on MetLife's representations regarding payment timing, the integrity of the portal submission process, and the integrity of the panel relationship and continued to perform services and forgo other opportunities.

51. As a direct and proximate result of MetLife's fraud, Plaintiffs have suffered compensatory and consequential damages, pain and suffering, severe emotional distress and are entitled to punitive damages, attorney fees and costs because MetLife's conduct was malicious, oppressive, or in conscious disregard of Plaintiffs' rights.

## VIII. FOURTH CAUSE OF ACTION

Unfair and Deceptive Trade Practices

52. Plaintiffs reallege and incorporate by reference paragraphs 1 through 51 as though fully set forth herein.

53. MetLife's conduct constitutes unfair and deceptive trade practices, including representing that services or practices have characteristics, benefits, or approval that they do not have (timely twice-monthly payment processing pursuant to a published PSR Monthly Closing Schedule (which MetLife eliminated after April 2026 without publishing any replacement schedule); transparent

audit and recoupment procedures; accurate investigation of portal submissions by the assigned Panel Representative), and engaging in other unfair methods of competition or deceptive acts in the course of business, including the opaque 50% recoupment practice, prolonged "under review" holds without communication, and the pattern of uninvestigated false responses by Olivia Smith that form part of a concerted effort to frustrate and force Plaintiffs out of the panel program.

54. Plaintiffs have suffered injury as a result and are entitled to actual damages, pain and suffering, severe emotional distress, attorney fees, and such other relief as the Court deems appropriate under applicable state law (including Maryland consumer protection and deceptive trade practices statute to the extent applicable).

## IX. FIFTH CAUSE OF ACTION

Unjust Enrichment / Quantum Meruit

55. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiffs conferred a benefit on MetLife by performing valuable legal services for MetLife plan members (including numerous Maryland clients). MetLife accepted and retained that benefit. It would be unjust for MetLife to retain the benefit without paying the reasonable value thereof in a timely manner, or to retain the value while unilaterally "recouping" approximately 50% of billings without transparent accounting, or while its agents issue uninvestigated false statements that further delay payment.

57. Plaintiffs are entitled to restitution of the reasonable value of the services provided, plus interest, and disgorgement of improperly recouped amounts.

## X. SIXTH CAUSE OF ACTION

Violation of 42 U.S.C. § 1981 – Racial Discrimination in the Making and Enforcement of Contracts

58. Plaintiffs reallege and incorporate by reference paragraphs 1 through 57 as though fully set forth herein.

59. 42 U.S.C. § 1981 guarantees to all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens. “Make and enforce contracts” includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

60. Plaintiffs are members of a racial minority group. MetLife intentionally discriminated against Plaintiffs on the basis of race by subjecting them to less favorable payment processing, longer “under review” periods for high-dollar invoices, more aggressive audit and opaque recoupment practices, uninvestigated and inaccurate responses by the assigned Panel Representative, and other less favorable terms and conditions of the panel contractual relationship than those afforded to similarly situated non-minority-owned firms performing comparable covered services. These practices form part of a concerted effort to pressure minority-owned firms, including Plaintiffs, into withdrawing from the panel program.

61. As a direct and proximate result, Plaintiffs have suffered economic damages, emotional distress, pain and suffering and other injuries and are entitled to compensatory and punitive damages, attorney fees under 42 U.S.C. § 1988, and injunctive relief.

## XI. SEVENTH CAUSE OF ACTION

Declaratory and Injunctive Relief

62. Plaintiffs reallege and incorporate by reference paragraphs 1 through 61 as though fully set forth herein.

63. An actual controversy exists between the parties concerning MetLife's payment obligations, the propriety of its "under review," withholding, and 50% recoupment practices, the disputed overpayment claim (already fully recouped without transparency), the accuracy and good faith of responses issued by its Panel Representative, and whether its practices discriminate against minority-owned firms and form part of a concerted effort to force such firms out of the panel program.

64. Plaintiffs seek a judicial declaration of the parties' rights and obligations and a permanent injunction requiring MetLife to: (a) pay all outstanding earned fees with interest and restore all improperly recouped amounts; (b) cease the selective prioritization of low-dollar invoices and indefinite delay of high-dollar fully documented invoices; (c) publish and adhere to a clear, written pay schedule with defined attorney submission deadlines and corresponding payment dates (as existed prior to the elimination of the PSR Monthly Closing Schedule in or about April 2026); (d) process all properly submitted bills in the ordinary course without artificial prioritization based on amount or firm ownership demographics; (e) provide transparent, contemporaneous itemized accounting of any withholdings or recoupments; (f) ensure that its Panel Representatives investigate portal status before responding to inquiries and refrain from issuing uninvestigated false characterizations of submissions; and (g) cease any further unilateral recoupment related to the previously disputed claim pending resolution by agreement or adjudication.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, MetLife Legal Plans, Inc., and Does 1–50, as follows:

A. For compensatory damages in an amount to be proven at trial, including all unpaid earned fees and improperly recouped amounts (at least $6,522 in specifically identified amounts plus additional withheld and recouped amounts), interest at the statutory or contractual rate, and consequential damages including overdraft and late fees;

B. For damages for emotional distress, pain and suffering;

C. For punitive damages in an amount sufficient to punish and deter the wrongful conduct;

D. For restitution and disgorgement under the unjust enrichment claim, including return of all improperly recouped amounts;

E. For a declaration of the parties' rights and obligations as alleged herein;

F. For a permanent injunction as prayed in the Seventh Cause of Action;

G. For reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable authority;

H. For pre-judgment and post-judgment interest; and

I. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

___/s/C. Valerie Ibe, Esq.________

C. Valerie Ibe, Esq.
Law Offices of C. Valerie Ibe, Inc.
1002 1/2 Reisterstown Road
Pikesville, MD 21208
Telephone: 818-900-5298
Email: Valerie@cvalerieibe-law.com
Bar ID: 29755
Counsel for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: October 8, 2026

Respectfully submitted,

___/s/C. Valerie Ibe, Esq.________

C. Valerie Ibe, Esq.
Law Offices of C. Valerie Ibe, Inc.
1002 1/2 Reisterstown Road
Pikesville, MD 21208
Telephone: 818-900-5298
Email: Valerie@cvalerieibe-law.com
Bar ID: 29755
Counsel for Plaintiffs